No. PD-1485-14

1485-14

ORIGINAL

ORAL ARGUMENT
REQUESTED

IN THE COURT OF
CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

TRAVARUS A. SHEAD
APPELLANT,

V.

THE STATE OF TEXAS,
APPELLEE

RECEIVED IN
COURT OF CRIMINAL APPEALS

FEB 09 2015

Abel Acosta, Clerk

APPELLANT'S

PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

FEB 10 2015

Abel Acosta, Clerk

No. 05-13-00880-CR
COURT OF APPEALS
FOR THE FIFTH DISTRICT
DALLAS, TEXAS

ON appeal from the 363rd Judicial DISTRICT
COURT OF DALLAS COUNTY, TEXAS
TRIAl COURT CAUSE No. F-12-55887-W

RESPECTFULLY SUBMITTED,
TRAVARUS A. SHEAD
Appellant pro se
T.D.C.J.-ID # 01864700
HUGHES UNIT
RT. 2 BOX 4400
GATESVILLE, TEXAS 76597

# TABLE OF CONTENTS

INDEX OF AUTHORITIES _ _ _ _ _ _ _ _ _ _ _ _ !!!

STATEMENT REGARDING ORAL ARGUMENT _ _ _ _ _ _ (1)

STATEMENT OF THE CASE _ _ _ _ _ _ _ _ _ _ (1)

STATEMENT OF PROCEDURAL HISTORY _ _ _ _ _ _ _ _ (2)

REASONS FOR REVIEW _ _ _ _ _ _ _ _ _ (3-5)

ARGUMENTS AND AUTHORITIES _ _ _ _ _ _ _ (6-12)

PRAYER FOR RELIEF _ _ _ _ _ _ _ _ _ (13)

CERTIFICATE OF SERVICE _ _ _ _ _ _ _ _ (13)

   APPENDIX (13)

      OPINION OF THE COURT OF APPEALS _ _ _ _ _ _ 'A'

# INDEX OF AUTHORITES

CASES

Aguirre v. State        732 S.W. 2d 320 (Tex. Crim. App. 1982)        Pg 6-8

Burks v. United States  437 U.S. 1 (1978)                            Pg 6-8, 12

Byrd v. State    336 S.W. 3d 242, 246 (TEX Crim App 2011)   Pg 6-8

Fuller v. State  73 S.W. 3d 250, 252 (Tex. Crim. App. 2002)   Pg 6-8

Greene v. Massey  437 U.S. 19 (1978)                         Pg 6-8, 12

In re Winship    397 U.S. 358, 364 (1970)                    Pg 6-8

Jackson v. Virginia    443 U.S. 307 (1974)                   Pg. 6-8, 12

Jackson v. Virginia    443 U.S. 307, 319 (1979)              Pg. 6-8

Whitaker v. State    977 S.W. 2d 595, 598 (Tex. Crim. App. 1998) Pg. 6-8

Williams v. State   235 S.W. 3d 742, 750 (TEX Crim. App 2007) Pg. 6-8


STATUTES

TEX. PENAL CODE 29.02

TEX PENAL CODE 29.02 (a) (1) (2)                             Pg (1)


CONSTITUTIONAL PROVISIONS                                    Pg 12

U.S. Const. Amend XIV

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests an opportunity to present oral argument in this case. Such argument would assist the court's decisional process in this case and help to clarify the issues and facts in support of them.

## STATEMENT OF THE CASE

(Appellant) Travarus Antwuan Shead was charged with the offense of Robbery. Tex Penal Code 29.02, Although not provided in the indictment, the State filed written Notice of intent to use a prior felony conviction for enhancement. A Jury found Mr. Shead guilty and assessed his punishment at 30 years in the Penitentiary.

(1)

Rev. 01/14/14

## STATEMENT OF PROCEDURAl HISTORY

Appellant filed a Motion for New Trial with Trial court that was denied by Operation of Law. Appellant went on to file notice of appeal with the trial court, and the Court appointed Attorney Catherine Clare Bernhard to repersent appellant on appeal. Catherine Bernhard filed a brief on appeilant's behalf to the Court of Appeals setting out factual arguments. The State gave a response and the Fifth DISTRICT OF DALLAS, TEXAS set out a judgement and affirmed the Trial court's decision on THE 23rd day of October 2014. Appeal Attorney Notified Appellant, explained to him his rights to have a higher court hear his case. After Two Motions For Extension of Time. Appeallant Now timely files this Petition for DISCRETIONARY REVIEW.

(2)

Rev. 01/14/14

# GROUNDS FOR REVIEW

**GROUND ONE:**

THE COURT OF APPEALS ERRED IN HOLDING

THAT THE EVIDENCE WAS SUFFICIENT.

**FACTS SUPPORTING GROUND ONE:**

The evidence in this case is legally insufficient to establish that Mr. Shead is the person who robbed Ms. Russell. No one at the scene was able to identify Mr. Shead. Ms. Russell was unable to pick Mr. Shead out of a photo line-up (IV R.R. at 42). Mr. Reyna was never shown a line up. (IV R.R at 22) And neither witnesses were able to identify Mr. Shead in court. The Surveillance Video was not clear enough to establish the identity of the person committing the offense. (IV R.R. at 33) which was confirmed by Det. Layton. And although both Arnald Greagor and Kendra Pearson said Mr. Shead had supposedly told them, neither can be called a credible witness Mr. Greagor was a convicted felon and Ms. Pearson was on probation for driving Ms. Russell's stolen car two days after Mr. Shead was arrested. (IV R.R. at 103, 152) (IV R.R. at 96, 144

(3)

**GROUND TWO:**

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE
THAT TRAVARUS SHEAD Committed THIS OFFENSE

**FACTS SUPPORTING GROUND TWO:**

Appellant alleges that Non of the evidence presente-
d at trial could prove him as the Robber and is ins
ufficient. (A) Russell did Not identify Appellant in the photo
line up (B) the eyewitness to the offense, Reyna, did Not
view a photo line up or identify Appellant in the Court-
Room (C) Another Supeonaed eyewitness store clerk Solom-
on Omar didn't appear at trial (I.V.R.R. 614 of 7 24-25) (D.) lead
12,13'
Detective Alberto Layton on stand admitted to useing
Improper Manipulation in conducting the photo line up
by admitting to Appellant he showed Ms. Russell a
old and New photo of him in attempt to highlight
to the victim Appellant was suspect (I.V.RR 4 of 7)
13,3-14

(4)

Rev. 01/14/14

**GROUND THREE:**

THE EVIDENCE IS LEGALLY INSUFFICIENT TO PROVE THAT THE VICTIM EITHER SUFFERED BODILY INJURY OR WAS THREATENED/PLACED IN FEAR OF BODILY INJURY OR DEATH

**FACTS SUPPORTING GROUND THREE:**

Ms. Russell testified that, although she was hit by her attacker, it did not hurt. (I.V.R.R at 34) Indeed, the responding Officer confirmed that Ms. Russell had No visible injuries. (IV.RR at 60). Ms. Russell also told Officer Carter that she didn't feel any pain and didn't need medical attention (IV R.R 49 8-12) which by her admission she wasn't in no way in fear of imminent Bodily Injury or Death or felt Threatened. although the statute includes the mental state of recklessly Neither the indictment Nor the jury charge in this case alleged a reckless mental state. Even viewing the evidence in the light most favorable to the verdict, No rational Juror could have so found this case to show beyond a reasonable doubt what indictment alleges.

## ARGUMENTS AND AUTHORITIES

Consistent with fundamental due process requirements, no person may be convicted of a criminal offense unless criminal responsibility for the offense is proved beyond a reasonable doubt. U.S. Const Amend XIV; In re Winship, 397 U.S. 358, 364 (1970). In reviewing the legal sufficiency of the evidence, the inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson V. Virginia, 443 U.S. 307, 319 (1979); Whitaker V. State, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). The Jackson standard measures evidentiary sufficiency against the "substantive

(6)

Rev. 01/14/14

elements of the offense as defined by State law". JACKSON, 433 U.S. at 324 N.16; Fuller V. State, 73 S.W. 3d 250, 252 (TEX. Crim. App. 2002). Under Texas State law, sufficiency of the evidence is measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case." Byrd V. State, 336 S.W.3d 242, 246 (TEX. Crim App. 2011). The evidence is insufficient under this standard in two circumstances: (1) the record contains No evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence, viewed in the light most favorable to the verdict, conclusively establishes a reasonable doubt. See JACKSON, 443 U.S at 314, 318 N.11, 320 Williams V. State, 235 S.W.3d 742, 750 (TEX Crim

(7)

Rev. 01/14/14

.App. 2007). A person commits a robbery if, in the course of committing theft and with intent to obtain or maintain control of property, he (1) intentionally or knowingly[1] causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. Tex. Penal Code 29.02 (a)(1).(2) In this case, both methods of committing the offense of robbery were alleged in the indictment in separate paragraphs.(C.R. at 1) Thus, if the evidence is sufficient to support the jury's verdict under either paragraph, the evidence will be sufficient. Aguirre v. State, 732 S.W.2d 320 (Tex.Crim. App. 1982)

[1] Although the statute includes the mental state of recklessly, neither the indictment nor the jury charge in this case alleged a reckless mental state.

(8)

Rev. 01/14/14

In the matters presented, the evidence was insufficient to prove (1) Travarus Shead was the person who assaulted Ms Russell and took her. (2) That Ms Russell either suffered bodily injury or was placed in fear (3) That the Court of Appeals erred by making a Affirmed judgement. In support of these arguments Contradictions should make law questions the Trial court's ruling, Jury's verdict, and Court of Appeals opinion. By there not being concrete evidence to make Mr. Shead the attacker a smoke screen was painted by the District Attorney to do so. Viewing of the video surveillance was clear enough for Ms. Russell to confirm that was exactly her, the attacker, and what took place the night of the robbery. She herself admitted to watching it a week before the

(9)

Rev. 01/14/14

Trial and recalled all what took place (IV RR 43, 44, 45) Even the District Attorney Ms. Hawkins explained to the Jury all details took place in the footage. So why would the state in the State's Brief retract (RR4:82-83) (State's Exh. 1) Russell viewed A six-person line up and did not make a positive id. Jacob Reyna was not shown a photo line-up and didn't i.d. Mr. Shead in Court. Both give two different accounts where phone was at. Ms. Russell say she picked it up by Bay pump 5 (RR4:37-38,46,52) And Reyna says it was up against wall (RR:4 24 19-23) He was positive to say he knew it wasn't On the ground because he could tell you "almost every cigarette butt or penny that's on that parking lot when he's working (RR:24 7-11)

(10)

Mr. Reyna who testified as a eyewitness stated "It wasn't like he was hitting or nothing and when asked if he seen assailant hitting her he said No!", He was yelling to Solomon the store clerk who was supeoned to get help. Solomon Omar never came to testify after being court ordered another witness (RR:4 of 7 13.1) Det. Cayton told Mr. Shead There are two photo line-ups, one with a old picture and one with a new picture which is improper manipulation of the photo line-up and evidence. That's highlighting to the victim in two line-ups with the same indivdual, Which makes it more logicall why Ms. Russell marked not sure on one of the pictures. Another problem is that the police never compared Witness Gregor's prints to the prints in the car. why? Also there was no way to prove - - - - - - - - -

(11)

Rev. 01/14/14

to prove Ms. Russell recieved Scrapes and bruises. There's no solid evidence just hear say, and two non credible witness who claim to know each other 3 or 4 years to only knowing Mr. Shead 6 months (R.R.4 161-14-17) seem to place blame on Mr. Shead. The evidence presented in this case is legally insufficient to meet the minimum due process requirements of the Fourteenth Amendment to the United States Constitution. See Jackson V. Virginia, 443 U.S. 307 (1974) As the evidence is insufficient to support the conviction, a judgement of acquittal must be entered. See Burks V. United States, 437 U.S 1 (1978); Greene V. Massey, 437 U.S. 19 (1978), Mr. Shead Ask this Court to reverse Court of Appeals judgement.

Rev. 01/14/14

## PRAYER FOR RELIEF

Appellant, TRAVARUS A. SHEAD, PRAYS THE COURT GRANT APPELLANTS PETITION FOR DISCRETIONARY REVIEW.

TRAVARUS A. Shead
Appellant Pro Se
T.D.C.J-I.D # 1864700
Hughes Unit
RT. 2 BOX 4400
GATESVILLE, TX 76597

## CERTIFICATE OF SERVICE

I hereby certify that I have mailed a copy of Appellant's Petition For Discretionary Review to opposing counsel on Feburary 5, 2015

TRAVARUS A. SHEAD
Appellant Pro Se



## PETITIONER'S INFORMATION

Petitioner's printed name: _____

State bar number, if applicable: _____

Address: _____

_____

_____

Telephone: _____

Fax: _____

## INMATE'S DECLARATION

I, __TRAVARUS A. Shead__, am the (applicant)/ petitioner (circle one) and

being presently incarcerated in __PRISON / T.D.C.J__, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on __FeBURAry 5th__, 20 __15__.

_____
Signature of (Applicant) /Petitioner (circle one)

17

Rev. 01/14/14



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TRAVARUS ANTWAUN SHEAD,
Appellant

No. 05-13-00880-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F12-55887-W.
Opinion delivered by Justice Lang-Miers,
Justices O'Neill and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 23rd day of October, 2013.

AFFIRM; and Opinion Filed October 23, 2014.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-00880-CR

TRAVARUS ANTWAUN SHEAD, Appellant
V.
THE STATE OF TEXAS, Appellee

On Appeal from the 363rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F12-55887-W

## MEMORANDUM OPINION

Before Justices O'Neill, Lang-Miers, and Brown
Opinion by Justice Lang-Miers

A jury found appellant Travarus Antwaun Shead guilty of robbery and assessed his punishment, enhanced with a prior felony conviction, at 30 years in prison. On appeal, appellant argues that the conviction must be reversed because the evidence is insufficient (1) to show he committed the offense or that (2) the victim suffered bodily injury or was threatened or placed in fear of imminent bodily injury or death. We affirm the judgment. We issue this memorandum opinion because the issues are settled. TEX. R. APP. P. 47.2(a), .4.

### FACTUAL BACKGROUND

Jacob Reyna was cleaning out trash cans and performing outside chores at a Shell gas station in Dallas late in the evening on May 14, 2012. He noticed a car on pump five with "like three" individuals. The occupants of the car got out, went to the restroom, bought some things, and got back in the car. Then one man got out of the car and the car drove off without him.

Reyna asked the man if he could be of assistance, and the man "kind of shook his head[.]" Reyna said "the next thing I heard was a lady hollering in the background, help me, call the police, what do you want, get away from me." He saw a lady "trying to hang on to her purse as much as she possibly could." She was struggling with the man he saw get out of the car earlier. They struggled and fell to the parking lot, but the man never got the lady's purse. Reyna called to the station attendant to get help. Then he noticed that the man and lady stopped arguing, the lady stopped hollering, and the man jumped up and drove off in the lady's car.

Laurie Russell testified that on May 14, 2012, she was driving a rental car because her car was in the shop for repairs. She stopped at a Shell gas station around 11 p.m. to buy a cell phone charger because her cell phone battery was dead. A car with four guys was there when she drove up, and she parked in the lane farthest from them. Although the station was open, the inside of the store was closed to customers at that time of night, so she was shopping through the window. She stooped down to look at the phone chargers and "someone yanked [her] purse on the back." A man "jerked" her shoulder "really hard." She was trying to hold onto her purse while the robber was yanking on it, "so he kind of jerked me all over the – a little bit over the parking lot." Video surveillance showed the robber grabbing Russell's purse and the two struggling on the parking lot and around the gas pumps. The robber told Russell to give him the purse. She said that by the time they were by the gas pump, "he said, bitch, give me your purse or I'll shoot you." He said, "[L]ook at this bitch. Bitch, give me the purse or I'll shoot you in the head." She did not see a weapon. He hit her a couple of times on the neck and upper chest area, but she said it did not hurt. During the struggle, they fell to the parking lot, which caused her pain. She sustained scrapes on her back, shoulder, and knees. She said the struggle was "intense" and she had difficulty describing it for the jury. She said, "It was a shock for me." She fell on her purse and the robber was unable to get it. But she dropped her car keys during the struggle, and the

–2–

robber picked them up and drove off in her car. Russell saw a cell phone on the ground in the area where they struggled and picked it up. She did not see the cell phone drop during the struggle and did not know if it had been there before the struggle.

While waiting for the police to arrive, Russell called a couple of the numbers that had been recently dialed on the cell phone. She talked to two different women, but neither would give her any information about the phone's owner. Several days later Russell looked at a photo line-up. She said five of the six photos did not match her attacker, but one she was "not sure" about. It was appellant's photograph. Surveillance video from the gas station was not clear enough to identify the robber.

Officer Jakarsha Carter responded to the robbery call. She described Russell as "very upset," "kind of scared," and "shaking a little bit." She said Russell's face was a little red, but she did not have any visible injuries and declined medical treatment. Russell gave the officer the cell phone she found.

Dallas police detective Alberto Layton was assigned to investigate the robbery. He called Russell, who told him what happened and about the cell phone she found. Layton obtained a search warrant for the phone and found appellant's email address on the phone. He also determined that the number assigned to the phone belonged to appellant on the day of the robbery. Appellant was arrested for the robbery a few days later, and Layton interviewed him. Appellant admitted the phone was his, but said he had lost it about two months before. He denied committing the robbery and said he was with his girlfriend the night of the robbery. At the time of the offense, appellant was living with his girlfriend and his girlfriend's twin sister and her boyfriend, Arnald Greagor. The detective told appellant that he was headed to appellant's girlfriend's house to interview her. By the time the detective arrived at the girlfriend's house, appellant had called her and told her to tell the detective he was with her at the time of the

—3—

robbery. He also told her to take "her car" to a certain place for a "tune-up." The girlfriend moved the car behind the house and told the detective that appellant was with her at home on the night of the robbery.

Even though the girlfriend confirmed appellant's alibi, Layton still believed appellant was involved. He retrieved contacts, photos, and other data from the phone, including a video of appellant and his girlfriend date-stamped a week before the robbery. Then he knew that appellant had lied about losing his phone a couple of months before. A few days after appellant's arrest, the police stopped the girlfriend while she was driving Russell's rental car and arrested her. The police found appellant's fingerprint on a CD inside the vehicle. Other fingerprints taken from the vehicle were inconclusive—appellant could not be excluded or identified as the person who left those prints. The girlfriend admitted to Layton that she lied about appellant being with her on the night of the robbery. She also told Layton that appellant confessed to her that he committed the robbery.

Greagor, the boyfriend of appellant's girlfriend's twin sister, testified that he had known appellant less than six months and that appellant had been living in Greagor's house. He said appellant came to the house the evening of May 14, 2012, in a new car and "was trying to use the [house] phone." Appellant said he lost his cell phone. Eventually appellant told Greagor that he got the car from a lady at a Shell gas station. Greagor testified that appellant said he was trying to "get some money or something from the lady and started wrestling with her and he couldn't get no money, so he took the car." Appellant said he "was just tussling with her to get her purse, and she fell on her purse, trying to – trying to hold on to the purse, and he took the car."

While appellant was in jail awaiting trial, he wrote letters to his girlfriend and Greagor. He told Greagor he could "plead the 5th" or "tell the jury that the D.A. told you to make these

–4–

false charges against me or they will give you a lot of time." He said "just tell them folks the truth I didn't do it." He told his girlfriend,

> All you got to do is not show up, and if you do just tell the jury you said what you said to detective because they said they would take your kids and give you a lot of prison time so out of fear you only told all they told you to say on recorder or write on paper. That easy. And then you can refuse any more ?'s or just tell them you would like to plead the 5th – meaning you don't have to say shit. Best option just don't show up.

Appellant testified in his defense and denied committing the robbery. He said he got off work from his regular job at 3 p.m. on May 14, 2012, and took the bus and a train to his sister-in-law's house in Plano where he helped her with her non-profit organization called Cheer Life Foundation. He said he talks to a group of kids to try to prevent them from joining gangs and from "liv[ing] the same type of lifestyle that I used to live[.]" When he left there, he went to his sister's house, which he said was more than 10 to 20 miles from Plano. His sister dropped him off at his girlfriend's house around 10:30 p.m. He said he gave his cell phone to Greagor that morning before he left for work and lied about it to the detective "to cover basically for Arnald." Appellant said Greagor drove the stolen vehicle to the house and was using it after the date of the offense. He said he rode in the stolen car "like twice" but "told them to drop me off at the bus stop[.]" He also said the service to his phone was disconnected in March of that year, so it had "been off, you know, a couple of months already. The only thing you could basically do on the phone is use it as a walkie-talkie or – or alarm . . . ." He said he gave it to Greagor that day because Greagor did not have a watch and needed to use it "to wake up later on that day[.]" When asked how Russell was able to use the phone to make calls after the robbery, appellant said, "That's a total lie." He said there was "no way" she could have used his phone to make calls because "[i]t was impossible."

–5–

**STANDARD OF REVIEW AND APPLICABLE LAW**

When an appellant challenges the sufficiency of the evidence to support a conviction, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Evidence is sufficient if "the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence when considered in the light most favorable to the verdict." *Id.* If the evidence is conflicting, we "'presume that the factfinder resolved the conflicts in favor of the prosecution' and defer to that determination." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)). This standard is the same for both direct and circumstantial evidence. *Id.*

A person commits robbery when

in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.

TEX. PENAL CODE ANN. § 29.02 (West 2011). The indictment charged that appellant

did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place LAURIE RUSSELL in fear of imminent bodily injury and death,

and further, said defendant did then and there intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury, to LAURIE RUSSELL, hereinafter called complainant, by STRIKING COMPLAINANT'S HEAD WITH DEFENDANT'S HAND AND FIST[.]

The jury charge tracked the indictment. It instructed the jury that "bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(8) (West Supp. 2014).

DISCUSSION

Appellant argues that the evidence is insufficient to show he committed the offense because Russell was unable to identify him, no one at the scene identified him, and the surveillance video was not clear enough to make an identification of the robber. He argues that the only link between him and the robbery was his cell phone, and he testified that he lent the phone to Greagor on the day of the offense.

We conclude that the evidence and reasonable inferences from the evidence were sufficient to allow the jury to conclude beyond a reasonable doubt that appellant committed the robbery. The detective testified that the person on the video surveillance matched the general description Russell gave of her attacker. And although Russell was unable to positively identify appellant as the attacker from the photo line-up, she was unable to exclude him as the robber, as she did with the other five photos. Other evidence showed that appellant lied about his cell phone being lost, and when he was caught in the lie, he made up another story about lending the phone to Greagor and lying about it to cover for him. Appellant also testified that service to his cell phone had been disconnected two months before the robbery, but when asked how Russell was able to make calls on it the night of the robbery, he said, "That's a total lie" and it would have been "impossible" for her to do so. Additionally, appellant's fingerprint was found on a CD inside the stolen vehicle, and other prints found in the car could not be excluded as belonging to him. And appellant's girlfriend and Greagor testified that appellant confessed to the robbery to them. Appellant argues that his girlfriend and Greagor were not credible witnesses, but credibility determinations are solely the province of the jury, and this Court must "'defer to the jury's credibility and weight determinations[.]'" *Thornton v. State*, 425 S.W.3d 289, 303 (Tex. Crim. App. 2014) (quoting *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)). The jury also heard appellant's recorded phone call from jail to his girlfriend about getting rid of the

–7–

car before the detective arrived to interview her and telling the detective that he was with her the night of the robbery. And prior to trial, appellant wrote his girlfriend and Greagor letters telling them to "plead the 5th" or, if they did testify, how to explain their statements to the detective that appellant confessed to the robbery. He told his girlfriend it would be best if she did not show up for trial. The jury in this case chose to believe appellant's girlfriend and Greagor.

Appellant also argues that the evidence is insufficient to prove that Russell either suffered bodily injury or was threatened or placed in fear of imminent bodily injury or death. He points to Russell's testimony that it did not hurt her when appellant hit her and the officer's testimony that Russell did not have visible injuries. But Russell also testified that she sustained scrapes on her body and that it was painful when she fell to the parking lot as she struggled with appellant over the purse. Russell's physical pain and scrapes as a result of resisting appellant's attempt to rob her are sufficient to show "bodily injury" for purposes of a robbery conviction. TEX. PENAL CODE ANN. § 1.07(8); *Lane v. State*, 763 S.W.2d 785, 786–87 (Tex. Crim. App. 1989); *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.).

We conclude that the evidence is sufficient to support the conviction. We resolve appellant's two issues against him and affirm the trial court's judgment.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130880F.U05

-8-